IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 1, 2024

IN RE AUBRIANNA O.

Appeal from the Circuit Court for Sevier County
No. 21-TM-21-I          Carter S. Moore, Judge

_____

No. E2023-00842-COA-R3-PT

_____

In this case involving termination of the mother's parental rights to her child, the trial court found that three statutory grounds for termination had been proven by clear and convincing evidence. The trial court further found that clear and convincing evidence demonstrated that termination of the mother's parental rights was in the child's best interest. The mother has appealed. Having determined that the trial court erred by failing to make sufficient findings of fact and conclusions of law concerning the ground of abandonment by failure to visit and the best interest analysis, we vacate those portions of the trial court's judgment and remand for further findings of fact and conclusions of law. In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY ARMSTRONG, JJ., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Danielle G.

Felisha B. White, Seymour, Tennessee, for the appellees, Arika R. and Duane R.

**OPINION**

I. Factual and Procedural History

This is an appeal filed by Danielle G. ("Mother") from the termination of her parental rights as to Aubrianna O. ("the Child") entered in the Sevier County Circuit Court ("trial court") on May 11, 2023. The matter came before the trial court upon a petition for

termination of parental rights and for adoption filed by the Child's paternal great aunt and uncle, Arika R. and Duane R. ("Petitioners").

The relationship between the Child and Petitioners began on March 30, 2019, when the Child came to stay with them at their home in Tennessee for a few weeks upon Mother's request. After several subsequent communications between Mother and Petitioners, the parties mutually decided that the Child would stay with Petitioners for an extended period so that the Child could benefit from a better school environment. On April 15, 2019, Mother executed a power of attorney delegating her parental authority concerning the Child to Petitioners so that they could care properly for the Child. Petitioners subsequently acquired uncontested limited guardianship regarding the Child in the probate court for Muskegon County in the state of Michigan, where Mother had been residing at the time the Child came to live with Petitioners. By agreed order entered on March 4, 2020, the order of limited guardianship was domesticated in Tennessee through the Juvenile Court for Sevier County, Petitioners' county of residence.

Spanning the next few years, Mother and the Child's father, Trevor O. ("Father"),[1] visited sporadically with the Child at Petitioners' home. These visits included an occasion when Petitioners traveled to Michigan for a funeral, one overnight stay with the Child in Tennessee in June 2019, and a week-long visit in July 2019, during which time the Child remained with her parents outside of Petitioners' home for two nights. During the termination trial, Mother testified that she had also visited with the Child in Tennessee in May 2020 for about a week and in July 2020 for "four or five nights," during which time the Child and Mother's other children spent overnights with Petitioners. Mother's next visit with the Child occurred in July 2021 after Mother had relocated from Michigan to Tennessee in March 2021. The July 2021 visit lasted approximately two days and did not include an overnight stay. By the time of the termination trial, neither Mother nor Father had visited with the Child in person from July 2021 through April 18, 2023. The evidence further demonstrated that neither parent had filed an action in Tennessee to regain custody of the Child. Moreover, Mother had not provided any financial support to Petitioners for the Child's daily care or for medical expenses from March 2019 through April 2023.

On September 23, 2021, Petitioners filed a petition to terminate parental rights and adopt the Child ("the Petition") alleging that Mother had (1) abandoned the Child as defined in Tennessee Code Annotated § 36-1-102(1)(A) in that she had "willfully failed to visit the [Child], contact [her] by telephone, or send [her] any gifts since August 2019"; (2) abandoned the Child pursuant to § 36-1-102(1)(A) because she had "failed to support or make reasonable payments toward the support of the child"; and (3) "failed to manifest an ability and willingness to assume legal and physical custody of [the Child], pursuant to

---

[1] The trial court also terminated Father's parental rights on May 11, 2023. Father has not participated in the instant appeal or otherwise challenged the trial court's determination. We will therefore confine our analysis to the facts applicable to Mother.

[Tennessee Code Annotated] § 36-1-113(g)(9)(A)(iv)." Petitioners further alleged that termination of Mother's and Father's parental rights was in the Child's best interest. On January 7, 2022, the trial court entered an order appointing attorney Wendy Patrick as guardian *ad litem* for the Child. Mother filed a response to the Petition on April 14, 2023, wherein she did not assert any affirmative defenses.

The trial court conducted a bench trial on April 18, 2023, during which Petitioners and Mother were the only witnesses. The trial court subsequently entered a final order on May 8, 2023, terminating Mother's parental rights to the Child and granting Petitioners exclusive care, custody, and control of the Child. In support, the trial court determined that Petitioners had met their burden in proving, by clear and convincing evidence, three statutory grounds for termination of Mother's parental rights: (1) abandonment by failure to exercise visitation beyond token visitation, (2) abandonment by failure to financially support the child beyond token support, and (3) failure to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child. The trial court further concluded that Mother had "failed to plead lack of willfulness as an affirmative defense in her responsive pleadings" and therefore "waived the argument that her failure to visit and failure to pay support was not willful[.]" The trial court next determined that termination of Mother's parental rights was in the Child's best interest pursuant to the factors set forth in Tennessee Code Annotated § 36-1-113(i). Mother timely appealed.

## II. Issues Presented

Mother presents four issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred in finding by clear and convincing evidence that Mother had abandoned the Child by failing to visit the Child pursuant to Tennessee Code Annotated §§ 36-1-113(g)(1) and 36-1-102.

2. Whether the trial court erred in finding by clear and convincing evidence that Mother had abandoned the Child by failing to financially support the Child pursuant to Tennessee Code Annotated §§ 36-1-113(g)(1) and 36-1-102.

3. Whether the trial court erred in finding by clear and convincing evidence that Mother had failed to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child pursuant to Tennessee Code Annotated § 36-1-113(g)(14).

4.	Whether the trial court erred in finding by clear and convincing evidence that termination of Mother's parental rights was in the Child's best interest.

## III.  Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).  The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings.  *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R.*, III, 193 S.W.3d at 530.  Questions of law, however, are reviewed *de novo* with no presumption of correctness.  *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002).  It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).  As our Supreme Court has explained:

The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)].  Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "final and irrevocable").  In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings.  *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.,* 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence.  *Santosky*, 455 U.S. at 769.  This standard minimizes the risk of

4

unnecessary or erroneous governmental interference with fundamental parental rights. *Id*.; *In re Bernard T*., 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T*. 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S*., 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R*., 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

* * *

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T*., 319 S.W.3d at 596-97.

*In re Carrington H*., 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T*., 319 S.W.3d 586, 596 (Tenn. 2010).

IV. Statutory Grounds for Termination of Parental Rights

As an initial matter, we note that statutory provisions governing termination of parental rights are frequently amended by the Tennessee legislature. Therefore, it is paramount that courts and litigants identify and refer to the correct version of the statute at issue. In most instances, the relevant statutory provision is the version that was in effect at the time the petition for termination of parental rights was filed. *See, e.g., In re Braxton M.*, 531 S.W.3d 708, 731 (Tenn. Ct. App. 2017) ("We determine that the version of the statute in effect at the time of the petition's filing controls this action."). Accordingly, throughout this Opinion, we refer to the versions of the statutes that were in effect on September 23, 2021, the date the Petition was filed. *See, e.g., In re Zakary O.*, No. E2022-01062-COA-R3-PT, 2023 WL 5215385, at *4 n.6 (Tenn. Ct. App. Aug. 15, 2023).

On the date the Petition was filed, the relevant version of Tennessee Code Annotated § 36-1-113(c) (West July 1, 2021, to June 30, 2022)[2] provided:

---

[2] Unless otherwise noted, throughout this Opinion, all citations to any sub-section within Tennessee Code Annotated § 36-1-113 shall be made in reference to the version that was effective between July 1, 2021,

Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

In its final judgment, the trial court found that clear and convincing evidence supported three separate grounds for termination of Mother's parental rights: (1) abandonment by failure to visit the Child, (2) abandonment by failure to provide financial support for the Child, and (3) failure to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child. We will address each statutory ground in turn.

## A. Statutory Abandonment

Concerning the initial two grounds of abandonment as determined by the trial court for termination of Mother's parental rights, Tennessee Code Annotated § 36-1-113(g) provides, in relevant part:

Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1)     Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tennessee Code Annotated § 36-1-102(1) (West, July 1, 2021, to May 8, 2022)[3] provided, in pertinent part:

_____

and June 30, 2022, and not to any other version of the statute. *See, e.g., In re Zakary O.*, 2023 WL 5215385, at *4, n.6. In some instances, the sub-section that was in effect at that time has not changed and therefore remains current.

[3] Unless otherwise noted, throughout this Opinion, all citations to any sub-section within Tennessee Code Annotated § 36-1-102 shall be made in reference to the version of the statute that was in effect between July 1, 2021, and May 8, 2022, and not to any other version of the statute. *See, e.g., In re Zakary O.*, 2023 WL 5215385, at *4, n.6. In some instances, the sub-section that was in effect at that time has not changed and therefore remains current.

(A)     For purposes of terminating [parental rights] in order to make that child available for adoption, "abandonment" means that:

       (i)     For a period of four (4) consecutive months immediately preceding the filing of a [petition for termination of parental rights] or adoption, that the [parents] either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

       * * *

(I)     For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

### 1. Affirmative Defense of Lack of Willfulness

Regarding the first two statutory grounds for parental rights termination alleged in the Petition—abandonment by failure to visit and abandonment by failure to provide support—Mother did not plead the affirmative defense of absence of willfulness, as codified in Tennessee Code Annotated § 36-1-102(1)(I) above. Accordingly, the trial court properly determined that Mother had waived that defense. In her appellate brief, Mother acknowledges that she has waived the affirmative defense of lack of willfulness as to both grounds. Therefore, such defense is deemed waived on appeal.

### 2. Abandonment by Failure to Financially Support

The trial court determined that Mother had abandoned the Child by failing to provide any support to Petitioners for care of the Child during the relevant four-month statutory period, which it found began on May 23, 2021, and ended on September 23, 2021 ("Determinative Period"). The trial court found that the Determinative Period concluded on the date the petition was filed, rather than the day preceding its filing. Because we find that this one-day difference does not affect our analysis of abandonment in this case, we deem the inclusion of the day of the petition's filing, September 23, 2021, to be harmless error. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (concluding that the applicable four-month statutory period

preceding filing of the termination petition ends on the day preceding filing). Regarding this ground, the trial court found:

> That during the [Determinative Period] the Mother failed to pay any support to the Petitioners for the care of the minor child. The Mother sent a birthday gift to the child in August 2021 but this does not amount to supporting the child;
>
> That due to the Mother's failure to support the child (more than token support) during the four (4) months prior to the filing of the Petition to Terminate the Mother has abandoned the child pursuant to Tenn. Code Ann. § 36-1-102;
>
> That the Mother failed to plead lack of willfulness as an affirmative defense in her responsive pleadings. Therefore, she has waived the argument that her failure to visit and failure to pay support was not willful[.]

(Paragraph numbering omitted.) The trial court also found that Mother had given no money to Petitioners at any time during the years the Child resided with them despite Mother's having "received $2000 per month in unemployment benefits the majority of 2020 and 2021" and having been "employed in 2019 and in 2022."

Although Mother admits that she did not pay any support to Petitioners for the care of the Child during the Determinative Period, she insists that Petitioners "did not expect, anticipate or even want support" from her. In addition, Mother asserts that the probate court of Muskegon County, Michigan, where Mother was residing at the time Petitioners assumed custody of the Child, never ordered Mother to pay support. Although Mother admits that she did not tender any money to Petitioners for care of the Child and states that she "can find no case law to support her position," she posits that she paid "the exact amount of child support ordered, expected and intended" insofar as no payments were ordered or asked of her. Accordingly, Mother contends that the trial court erred in finding she had abandoned the Child on this ground.

Established Tennessee law undergirds the trial court's conclusion that Mother maintained an obligation to provide support for the Child even though she had never been ordered by a court to pay child support and Petitioners had never requested that she pay them for care of the Child during the Determinative Period. *See* Tenn. Code Ann. § 36-1-102(1)(H) ("Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]"); *State Dep't of Children's Services v. Culbertson*, 152 S.W.3d 513, 523-24 (Tenn. Ct. App. 2004) ("In Tennessee . . . the obligation to pay [child] support exists even in the absence of a court order to do so.") (citation omitted). Mother acknowledges that she did not pay any support for care of the Child during the Determinative Period despite evidence that

8

Mother had the ability to pay some amount for the Child's care. Therefore, we affirm the trial court's determination that clear and convincing evidence established that Mother had abandoned the Child by failure to provide financial support for the Child during the Determinative Period pursuant to Tennessee Code Annotated §§ 36-1-113(g) and 36-1-102.

### 3. Abandonment by Failure to Visit

The trial court determined that a second statutory ground for termination was established by clear and convincing evidence demonstrating that Mother had failed to visit the Child, beyond mere "token" visitation, during the Determinative Period. In relevant portion, the trial court specifically found:

> That during the [Determinative Period] the Mother only visited with the child during one visit over the child's birthday. This visit did not include overnights and the total hours of the visit was less than twenty-four (24) hours.
>
> That the Mother was not working during this time and had moved closer to the child than she had been when previously living in Michigan;
>
> That the visitation exercised by the Mother during the [Determinative Period] only amount[ed] to token visitation;
>
> That due to the Mother's failure to exercise visitation (more than token visitation) during the [Determinative Period] the Mother has abandoned the child pursuant to Tenn. Code Ann. § 36-1-102;
>
> * * *
>
> That the Mother failed to plead lack of willfulness as an affirmative defense in her responsive pleadings. Therefore, she has waived the argument that her failure to visit and failure to pay support was not willful[.]

(Paragraph numbering omitted.)

Tennessee Code Annotated § 36-1-102(1)(C) defines "token visitation" as

> visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child.

9

As this Court has explained, "[w]hether a parent's visitation is 'token' requires a fact-intensive inquiry to be determined on a case-by-case basis." *In re Adoption of Z.J.D.*, No. M2012-01596-COA-R3PT, 2013 WL 870654, at *3 (Tenn. Ct. App. Mar. 7, 2013) (citing *In re Keri C.*, 384 S.W.3d 731, 748 (Tenn. Ct. App. 2010)).

Mother acknowledges in her appellate brief that she only visited the Child once in person during the Determinative Period but avers that she nonetheless engaged in "significant" communication with the Child through frequent FaceTime visits. According to Mother, during these FaceTime visits, Mother and Child would "play[] games together" and "talk a lot and for several hours." Mother includes that "prior to [the Child] refusing to speak with [Mother] the two would FaceTime, if not every day, then every other day." Mother related that these frequent, often lengthy, virtual visits between herself and the Child continued through August 2021, at which time the Child began refusing to speak with her.

Notwithstanding Mother's testimony relative to the FaceTime visits, the trial court made no findings in its written order regarding these virtual visits. Instead, the trial court determined that Mother had abandoned the Child by failing to visit upon finding that Mother's single, in-person visit with the Child during the Determinative Period only amounted to "token visitation." Upon a careful review of the trial court's order and the record, we conclude that Mother's testimony respecting her FaceTime visits with the Child could potentially demonstrate more than token visitation, such that evidence of these visits may indeed preponderate against the trial court's finding of abandonment by failure to visit the Child. *See In re Samone D. et al.*, No. W2021-01225-COA-R3-PT, 2023 WL 1962016, at *9 (Tenn. Ct. App. February 26, 2024) (holding that the father's "frequent phone visitation with the child . . . was not token visitation" after taking judicial notice of our Supreme Court's standing order during the Covid-19 pandemic "encouraging the use of available technologies, including video conferencing[.]"); *In re Keilyn O.*, No. M2017-02386-COA-R3-PT, 2018 WL 3208151, at *6 (Tenn. Ct. App. June 28, 2018) (collecting cases and concluding that the mother's regular phone conversations with her child constituted a valid defense to the willfulness element of abandonment). Because the trial court did not reference and make factual findings concerning these potentially significant FaceTime visits in its analysis of this ground for termination, we are unable to conduct a thorough review of that decision. *See In re Gabriella*, 531 S.W.3d 662, 681-82 (Tenn. 2017). Moreover, the respective factual findings and conclusions would be relevant to the trial court's best interest analysis and determination on remand.[4] Ergo, we vacate the trial court's finding of this ground as a basis for termination of Mother's parental rights to the Child and remand to the trial court for findings of fact and conclusions of law regarding Mother's FaceTime visits with the Child.

---

[4] *See* Section V of this Opinion, remanding the best interest analysis to the trial court for findings of fact and conclusions of law relative to the statutory best interest factors.

### B.  Failure to Manifest an Ability and Willingness to Assume Custody of or Financial Responsibility for the Child

Lastly, the trial court found by clear and convincing evidence that Mother had failed to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child.  Concerning this statutory ground, Tennessee Code Annotated § 36-1-113(g)(14) provides that termination of parental rights is warranted when:

> [a] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Our Supreme Court has explained the following regarding this ground for termination of parental rights:

> Two prongs must be proven by clear and convincing evidence to terminate parental rights under this statute:  (1) the parent or legal guardian failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child; and (2) placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

*In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020).  As to the first prong, our Supreme Court has instructed:

> [S]ection 36-1-113(g)(14) places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child.  If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*In re Neveah M.*, 614 S.W.3d at 677 (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *13 (Tenn. Ct. App. June 20, 2018)).  Concerning the "substantial harm" requirement of the second prong, this Court has observed:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child.  These circumstances are not amenable to precise definition because of the variability of human conduct.  However, the use of the modifier "substantial" indicates two things.  First, it connotes a real hazard or danger that is not minor, trivial, or insignificant.  Second, it

11

indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *8 (Tenn. Ct. App. Apr. 4, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted in *Maya R.*)).

In the instant action, the trial court determined that both prongs of this statutory ground had been met as to Mother upon delineating the relevant findings of fact, as follows:

That the Mother gave the child to the Petitioners on or about March 30, 2019;

At the time the child came to live with the Petitioners she had only seen or been around the Petitioners a very few times;

That during the forty-eight (48) months the child has resided with the Petitioners, the Mother only visited five (5) times;

Prior to the birthday visit in July 2021, it had been one (1) year since the Mother last saw the child;

That the Mother could have visited the child more often than she did;

That the Mother was receiving approximately $2000 per month in unemployment benefits the majority of 2020 and 2021 and failed to send any money to the Petitioners for support of the minor child;

That the Mother was employed in 2019 and in 2022 and failed to send any money to the Petitioners for the support of the minor child;

That the Mother has not, since giving the minor child. to the Petitioners in March 2019, filed anything with either the court in Michigan or Tennessee to regain custody or set regular visits with the child. The Court is aware that the Mother testified she attempted to file an action with the Court but failed to follow through with the filing of the appropriate paperwork;

That the Mother is or was during the relevant time periods residing in the home with the child's Father;

12

That due to the above, the Mother has failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the minor child;

That due to the above, placing the child in the Mother's legal and physical custody would pose a risk of substantial harm to the physical and psychological welfare of the child[.]

(Paragraph numbering omitted.) The trial court also determined that the Child had "bonded" with Petitioners, Petitioners had "taken care of all of the [child's] medical needs," and the Child was "thriving in [Petitioners'] care."

### 1. Failure to Manifest an Ability or Willingness to Assume Legal and Physical Custody

On appeal, Mother contends that she had "not only demonstrated an ability but also the willingness to assume legal and physical custody of her Child." According to Mother, she has "successfully raised her remaining three children[,]" has "managed to put her life back together" following an abusive relationship, has moved into a home with "sufficient bedrooms" for all of her children, and "now has a support system in Sardis, Tennessee" where she currently resides. In advancing her argument concerning this ground, Mother emphasizes that she desired to take the Child "to another part of Tennessee" but that Arika R. did not allow her to do so. Mother laments that had she been permitted to travel with the Child at that time, "[Mother] would have been given the opportunity to demonstrate her ability and willingness" to assume legal and physical custody of the Child.

Upon careful review of the record, we find that Mother's contentions regarding her willingness and ability to assume legal and physical custody of the Child lack a sufficient evidentiary basis to preponderate against the trial court's determination that this statutory ground was established by clear and convincing evidence. Mother's postulate that she had raised her "remaining three children," does not resolve the question of her ability and willingness to assume legal and physical custody of the Child, whom the trial court concluded had lived outside of Mother's home from March 2019 until the date of the hearing in April 2023. Moreover, testimony during trial evinced that Mother had permitted another of her children to reside with Petitioners for a period of "six months straight" in 2020 and 2021. As to that child, Mother refused to grant guardianship to Petitioners. Consequently, they insisted that Mother resume custody. These facts concerning Mother's second child raise concern as to Mother's ability to consistently care for at least one of her other children. For these reasons, Mother's argument that she raised her "remaining" children is unavailing.

Although Mother avers that she now resides in a home with "sufficient bedrooms for all of her children," and that she now benefits from a "support system" in Sardis,

Tennessee, the record is devoid of any indication that Mother discussed or made plans for the Child to return to live with her in Sardis. Moreover, Mother did not provide photographs or other proof of the suitability of the home in Sardis. Although Mother proffered that a "DCS worker" had visited the home associated with a "referral" in another matter and that this DCS worker had voiced no concerns about the home at that time, the record contains no report from the DCS worker.

Significantly, Mother acknowledged during her testimony that she never sought court intervention to regain guardianship of the Child in Tennessee, which would have been required before Mother could bring the Child home to reside with her. According to the guardianship plan executed on July 25, 2019, which was domesticated in Tennessee by court order on March 4, 2020, Mother and Father voluntarily permitted Petitioners to care for the Child and agreed with the plan's terms. Those terms included a provision governing the steps Mother and/or Father would take to terminate or modify the guardianship plan. The plan significantly stated that Mother must demonstrate to the court that she had achieved "stable and appropriate housing," "stable employment," the "ability to provide for [the Child's] physical, emotional and medical needs," and "continued contact with [the Child] to maintain an appropriate bond." Significantly, Mother filed no action with the trial court to demonstrate that these conditions had been met. Furthermore, Mother offered no proof that she had discussed with Petitioners the possibility of regaining guardianship of the Child or that she had met the criteria required to modify the guardianship plan. In addition, it is undisputed, as reviewed above, that Mother failed to display a willingness to assume financial responsibility for the Child's physical and medical needs. Mother never paid for any of the Child's medical or living expenses, save an occasional gift, despite proof that Mother earned more than $20,000 annually in gross income from unemployment benefits and various jobs in 2020 and 2021.

We note that the trial court made several findings under this ground relative to Mother's failure to visit the Child: that during the four years the Child resided with Petitioners, "Mother only visited five (5) times"; that in July 2021 it had been one year since Mother "last saw the Child;" and that Mother "could have visited the Child more often than she did[.]" Just as the trial court did not reference Mother's virtual visits with the Child in its analysis of the ground of abandonment by failure to visit, the trial court also did not mention Mother's virtual visits with the Child in finding the existence of this statutory ground. However, this omission notwithstanding, we find that the trial court's other factual findings relative to this ground—including Mother's failure to provide support for the Child, her living circumstances, and her failure to file any action to regain custody or set regular visits with the Child—were sufficient to support termination of Mother's parental rights on this ground. *See, e.g.*, *In re Neveah W.*, No. M2023-00944-COA-R-3PT, 2024 WL 1792775, at *20 (Tenn. Ct. App. Apr. 25, 2024) (affirming the trial court's finding on the ground of failure to manifest despite findings of fact that were "somewhat conclusory" because the other factual findings under this ground and "in the order as a whole" supported the trial court's determination). In sum, our review of the

14

record reveals that the trial court did not err in finding, by clear and convincing evidence, that Mother had failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child.

### 2. Substantial Risk of Harm

Mother posits that even should the first prong be established, Petitioners failed to prove by clear and convincing evidence that placing the child in Mother's legal and physical custody would pose a risk of substantial harm to the Child's physical or psychological well-being. Mother claims that "[n]o physical nor psychological harm to the [C]hild was ever offered into evidence." However, evidence presented during trial demonstrated that Mother's residential arrangement was "unstable" in March 2019 when the Child came to reside with Petitioners. In addition, the proof showed that the Child "had frequent lice that resulted in her being kept home from school," resulting in truancy problems, and that Mother had been living with a boyfriend during 2019 who "beat [Mother] every single day."

Indeed, a parent's residential circumstances may improve, rendering it appropriate for a child to later return to live with that parent. However, as reviewed above, meager evidence was proffered regarding Mother's living conditions at the time of trial. Arika R. testified that during late 2020 and early 2021, she observed that Mother had been "living in a home with ten other people," one of Mother's other children had been "sleeping on a couch in filthy conditions," and Mother's home contained "bed bugs." The record is unclear as to when or where Arika R. observed these circumstances at Mother's home. However, Mother did not offer sufficient evidence during trial that her living conditions had improved in Sardis, where she had lived since January 2021. Mother's testimony regarding her residence in Sardis was that the home had "sufficient bedrooms" for all the children and was located on "15 acres." The trial court properly weighed the evidence and credited Arika R.'s testimony respecting Mother's residential conditions. We will not substitute our own judgment for that of the trial court. *See In re Braxton M.,* 531 S.W.3d at 718 ("The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.") (citation omitted).

Significantly, the trial court found that the Child had "bonded" with Petitioners and that she was "thriving" in their care, determinations that are supported by the record. By the time of trial, the Child had lived with Petitioners for over four years. The Child had come to reside with Petitioners when she was seven years old. During her four years with Petitioners, the Child's performance improved in school, and she had attended therapy sessions wherein the therapist determined that the Child was "well-established." The evidence also demonstrated that the Child maintained a positive relationship with Petitioners and their children. Furthermore, the Child had expressed to Arika R. a desire to become a permanent member of Petitioners' family.

15

This Court has previously determined that removing a child who has "bonded and thrived" with her current family amounts to substantial harm. *See In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at *17 (Tenn. Ct. App. July 22, 2020) (determining that the child would be at risk of substantial psychological harm if custody were restored to the father who had been apart from the child for five years and was a "virtual stranger"); *In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at *9 (Tenn. Ct. App. Nov. 25, 2019) (concluding that placing the children in the mother's custody would put them at risk of substantial harm because the children were "very young" when they were removed and had "little to no contact" with the mother for more than a year). Accordingly, we will not disturb the trial court's determination that Petitioners met their burden to show that the Child would suffer "substantial harm" if returned to Mother's custody. For the above-stated reasons, the trial court did not err in concluding that the elements of this statutory ground for termination, failure to manifest an ability and willingness to assume legal and physical custody of the Child, had been met by clear and convincing evidence.

## V. Best Interest of the Child

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 ("The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." (quoting *In re Angela E.*, 303 S.W.3d 240, (Tenn. 2010))).

Tennessee Code Annotated § 36-1-113(i) provides a list of twenty factors the trial court is to consider when determining if termination of parental rights is in a child's best interest:

(A)     The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C)     Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

16

(D)      Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E)      Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F)      Whether the child is fearful of living in the parent's home;

(G)      Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H)      Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I)      Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J)      Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K)      Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L)      Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M)      Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N)     Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O)     Whether the parent has ever provided safe and stable care for the child or any other child;

(P)     Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q)     Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R)     Whether the physical environment of the parent's home is healthy and safe for the child;

(S)     Whether the parent has consistently provided more than token financial support for the child; and

(T)     Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.,* 483 S.W.3d at 523; *In re Audrey S.,* 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). The best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004). The statute further provides: "When considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tenn. Code Ann. § 36-1-113(g)(i)(2).

Under the previous statutory scheme utilizing nine similar best interest factors, our Supreme Court instructed regarding the best interest analysis as a whole:

These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered

in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d [533,] 555 [(Tenn. 2015)] (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . . " Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

In re Gabriella D., 531 S.W.3d at 681-82.

In the case at bar, Mother contends that the trial court failed to consider all relevant factors for determining whether termination of her parental rights was in the Child's best interest and that the court "failed to make specific findings as required by statute." After determining that statutory grounds existed for termination of Mother's parental rights, the trial court addressed the best interest factors as follows:

19

In considering whether the termination of the Mother's parental rights was in the best interest of the minor child pursuant to the factors set out in Tenn. Code Ann. § 36-1-113, this Court finds the majority of the factors weigh in favor of the Petitioners, especially the following:

(B)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C)     Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D)     Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E)     Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(H)     Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I)     Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J)     Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(Q)     Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the

20

child's basic and specific needs and in which the child can thrive;

(R)     Whether the physical environment of the parent's home is healthy and safe for the child;

(S)     Whether the parent has consistently provided more than token financial support for the child[.]

(Paragraph numbering omitted.)

As Mother correctly posits, the parental termination statute requires that "[a]ll factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order." *See* Tenn. Code Ann. § 36-1-113(i)(3); *see also In re Gabriella D.*, 531 S.W.3d at 681-82. Moreover, Tennessee Code Annotated § 36-1-113(k) "explicitly requires courts terminating parental rights to enter an order which makes specific findings of fact and conclusions of law[.]" *In re Maria B.S.*, No. E2011-01784-COA-R3-PT, 2012 WL 1431244, at *2 (Tenn. Ct. App. Apr. 26, 2012) (quoting *In re Audrey S.*, 182 S.W.3d at 861). Regarding the requirement, this Court has explained:

The parental termination statute requires "an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). As our supreme court has observed, this Court "has routinely remanded contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests." *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010); *see e.g.*, *In re Autumn D.*, No. E2020-00560-COA-R3-PT, 2020 WL 6306056, at *5 (Tenn. Ct. App. Oct. 28, 2020) (vacating the order on the failure to manifest ground for not including a specific finding regarding a risk of substantial harm and remanding for the trial court to make the necessary findings of fact and conclusions of law); *In re Mickeal Z.*, No. E2018-01069-COA-R3-PT, 2019 WL 337038, at *13 (Tenn. Ct. App. Jan. 25, 2019) (concluding that the court was "compelled" to vacate the order terminating parental rights and remand for an appropriate order when the trial court failed to make specific findings regarding each of the elements of a statutory ground for termination); *In re Haley S.*, No. M2017-00214-COA-R3-PT, 2018 WL 1560078, at *10 (Tenn. Ct. App. Mar. 29, 2018) (vacating the termination of parental rights and remanding for sufficient findings of fact and conclusions of law regarding the grounds for termination and the best interest of the child).

*In re Dakari M.*, No. M2022-00365-COA-R3-PT, 2024 WL 1269860, at *5 (Tenn. Ct. App. Mar. 26, 2024).

Respectfully, the final order of termination lacks specific findings of fact and conclusions of law relative to the "best interest" factors as required by Tennessee Code Annotated § 36-1-113(i)(3) and (k). The trial court delineated certain factors that "weigh[ed] in favor of the Petitioners" but failed to incorporate attendant and respective factual findings. Upon careful review, we are unable to discern whether the trial court's analysis considered the other statutory factors as well or any other proof presented during trial. *See In re Gabriella D.*, 531 S.W.3d at 681-82. In the context of a parental termination case, "[w]hen a trial court has not complied with Tenn. Code Ann. § 36-1-113(k), we cannot simply review the record *de novo* and determine for ourselves where the preponderance of the evidence lies as we would in other civil, non-jury cases." *In re K.N.R.,* No. M2003-1301-COA-R3-PT, 2003 WL 22999427, at *3 (Tenn. Ct. App. Dec. 23, 2003). This is because "[a] trial court's failure to comply with Tenn. Code Ann. § 36-1-113(k) affects more than the standard of appellate review. It affects the viability of the appeal." *In re Maria B.S.*, 2012 WL 1431244, at *3 (quoting *In re C.R.B.*, No. M2003-00345-COA-R3-JV, 2003 WL 2268091, at *4 (Tenn. Ct. App. Nov. 13, 2003)). In such instances, "the Tennessee Supreme Court has instructed the appellate courts to remand the case to the trial court for the preparation of appropriate written findings of fact and conclusions of law." *Id.*; *see also In re Cartier H.*, No. M2022-01576-COA-R3-PT, 2023 WL 7158076, at *14 (Tenn. Ct. App. Oct. 31, 2023).

In the instant action, by reason of the absence of specific findings of fact attendant to the statutory factors in support of the best interest determination, that portion of the final order must be vacated with instructions that upon remand, specific findings of fact and conclusions of law be included relative to the statutory best interest factors. We recognize that vacating the trial court's ruling will prolong the proceedings and delay finality for the Child in this case. However, we note that the Child currently resides in a stable environment with Petitioners, with whom she has now lived for the past five years, such that the delay should prove to yield a minimal impact. Furthermore, although the Child's well-being is certainly paramount, we find that remand in this matter is imperative. As such, the best interest analysis will be a "factually intensive undertaking," ensuring that Mother receives "individualized consideration before fundamental parental rights are terminated." *See In re Gabriella D.*, 531 S.W.3d at 682 (citing *In re Carrington H.*, 483 S.W.3d at 523).

## VI. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court concerning two of the statutory grounds for termination of Mother's parental rights: statutory abandonment by failure to provide financial support for the Child and failure to manifest an ability and willingness to assume legal and physical custody of the Child. We vacate, for insufficient findings of fact and conclusions of law, the trial court's determination that Mother

abandoned the Child by failing to visit and its conclusion that termination of Mother's parental rights was in the Child's best interest. This case is remanded to the trial court with instructions to amend the termination order to include specific findings of fact and conclusions of law attendant to the ground of abandonment by failure to visit, specifically related to the evidence in the record concerning Mother's FaceTime visits with the Child. The trial court is further instructed to include specific findings of fact and conclusions of law relative to the best interest factors listed in Tennessee Code Annotated § 36-1-113(i)(1)(A)-(T). Costs on appeal are assessed one-half to the appellant, Danielle G., and one-half to the appellees, Arika R. and Duane R.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

23